IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HENRY SAAVEDRA,

      Plaintiff,

vs.                                             No. 12-CV-1111 MV/ACT

CITY OF ALBUQUERQUE,
VICTOR GROSSETETE,
and JOHN/JANE DOES 1-6,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment (Doc. 19). The Court has considered the motion, briefs, and the relevant law, and being otherwise fully informed, **FINDS** that the motion shall be **GRANTED IN PART** and **DENIED AS MOOT IN PART** for the reasons stated herein.

### BACKGROUND

On the evening of January 28, 2012, Defendant Officer Victor Grossetete of the Albuquerque Police Department heard a radio transmission regarding a motorcyclist (later identified as Plaintiff) driving recklessly. Shortly thereafter, Officer Grossetete observed the motorcycle, clocking its speed at 122 miles per hour in a 35 mile-per-hour zone. Officer Grossetete, who was in a marked patrol car, attempted to follow Plaintiff. According to Defendants, Officer Grossetete briefly engaged his emergency equipment, but then disengaged it when Air One, a police surveillance aircraft, began following Plaintiff as he entered the interstate. Ignoring his supervisor's order to cease the pursuit, Defendant Grossetete continued

1

to follow Plaintiff's path on the interstate, at a lower rate of speed and without his emergency equipment engaged. When Plaintiff slowed down to a pace more consistent with the flow of traffic, Officer Grossetete caught up with him and continued to follow him at an appropriate distance, but he did not engage his emergency equipment. Soon thereafter, Plaintiff sped up again, eventually decreasing his speed to match the flow of traffic, but increased it again to an excessive rate.

According to Plaintiff, just before this chase commenced, a group of men in an SUV were harassing him and throwing beer cans at him. He did not know who these men were, and he feared for his safety. Plaintiff began speeding through the neighborhoods of Albuquerque and he eventually entered the interstate, in an effort to escape from the people in the SUV. While on the interstate, Plaintiff saw that someone was following him, and he feared it was the same SUV. In the midst of this fear, he continued to drive at a high rate of speed on the interstate in the hopes of escaping from the SUV.

Air One maintained surveillance throughout the entire incident. As Plaintiff increased and decreased his speed, Officer Grossetete fell behind him and again caught up with him. While Plaintiff was driving at an excessive rate of speed and Officer Grossetete trailed him by a significant distance, Plaintiff suddenly exited the interstate and pulled his motorcycle behind a police vehicle, which was simultaneously exiting to station itself in the median in between the off-ramp and right-most lane of traffic. Roughly eight seconds later, Officer Grossetete exited, engaged his brakes suddenly, and collided with Plaintiff's motorcycle from behind. The force of the collision ejected Plaintiff from his motorcycle. He landed in the median in front of the motorcycle, next to the other police vehicle. More police vehicles arrived on scene in a matter of

seconds, and Plaintiff was handcuffed and arrested.  Plaintiff has not provided any evidence that he sustained bodily injury.

Plaintiff has raised a claim of excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983, as well as state law claims under the New Mexico Tort Claims Act, and a claim of negligence under state law.  Defendants now move for summary judgment on all of Plaintiff's claims.  In response to the federal claim, they assert a qualified immunity defense.  With respect to Plaintiff's state law claims, Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted.  Alternatively Defendants request that the Court decline to exercise supplemental jurisdiction over these claims.

## APPLICABLE LAW

I.     **Summary Judgment**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2).  The moving party bears the initial burden of showing "an absence of evidence to support the nonmoving party's case."  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted).  The burden then shifts to the non-moving party to show a genuine issue of material fact.  *Id*.  In response to a properly supported motion for summary judgment, the non-movant "may not rely merely on allegations or denials in its own pleading . . . [but rather must] set out specific facts showing a genuine issue for trial."  *Id*.

In reviewing a motion for summary judgment, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings.  *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F. 3d 1045, 1050 (10th Cir. 2008).  Rather, the

Court's task is to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.     Qualified Immunity

The qualified immunity doctrine shields government officials from suits for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Last term, the United States Supreme Court explained:

> Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.

*Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244-45 (2012) (citations omitted).

In contrast to a traditional summary judgment motion, in the context of qualified immunity the plaintiff bears the burden of proof. *Camuglia v. City of Albuquerque*, 448 F. 3d 1214, 1218 (10th Cir. 2006). To survive a motion for summary judgment where qualified immunity is at issue, Plaintiff must demonstrate on the facts alleged that: (1) Defendants' conduct violated his federal constitutional or statutory rights, and (2) the right violated was clearly established at the time of the alleged violation. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (citing *Pearson*, 555 U.S. 223 (2009)).

In determining whether the plaintiff has met his burden, the Court construes the facts in the light most favorable to the plaintiff as the non-moving party. *Scott v. Harris,* 550 U.S. 372,

4

377 (2007). In assessing whether the plaintiff's asserted right was clearly established, the Court looks for "Supreme Court or Tenth Circuit precedent on point or clearly established weight of authority from other courts finding the law to be as the plaintiff maintains." *Koch v. City of Del City*, 660 F.2d 1228, 1246 (10th Cir. 2011). However, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled in part by Pearson*, 555 U.S. 223 (2009); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

## DISCUSSION

**I.     Fourth Amendment Claim**

Plaintiff claims that Officer Grossetete used excessive force in effecting Plaintiff's arrest, by colliding with Plaintiff and ejecting him from his motorcycle.[1] Defendants argue that the contact between Officer Grossetete's police car and Plaintiff's motorcycle was accidental, and it therefore did not amount to a seizure. Rather, argue Defendants, no seizure occurred until Plaintiff was handcuffed. Accordingly, Plaintiff's claim of excessive force based on the collision is without merit.

As with any summary judgment motion, the Court must construe the facts in the light most favorable to the non-moving party, which in this case is Plaintiff. However, the Court must construe the facts in Plaintiff's favor only insofar as such construction is supported in the record.

---

[1] In the First Amended Complaint (Doc. 24), Plaintiff appears to argue that Officer Grossetete used excessive force in handcuffing him. However, as Plaintiff has abandoned this argument in the summary judgment briefing, the Court need not address it.

5

*See Matsushita*, 475 U.S. at 586-87 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."). Additionally, the Court need only consider those facts that are relevant to the question before it.

In this case, these settled principles require that the Court not consider Plaintiff's assertion that he had been harassed by people in an SUV. First and foremost, a reasonable officer in Officer Grossetete's position would have had no basis to know why or from whom Plaintiff was fleeing. But secondly, Plaintiff has failed to explain how his belief that he was being pursued excused his behavior. Indeed, had Officer Grossetete known that these seemingly dangerous people were pursuing Plaintiff, the officer would have had all the more reason to follow Plaintiff and attempt to intervene so as to stop a high-speed chase between two civilians. Plaintiff's suggestion that he believed that the police vehicle – a standard police sedan with lights and sirens atop the vehicle – *was* the SUV, is far-fetched. There is no reason that Officer Grossetete should have anticipated that Plaintiff mistook him for the SUV.

In addition, the Court concludes that Officer Grossetete's decision to follow Plaintiff in violation of his supervisor's order is irrelevant. The Tenth Circuit "has consistently held that the violation of police regulations is insufficient to ground a § 1983 action for excessive force." *Tanberg v. Sholtis*, 401 F.3d 1151, 1163 (10th Cir. 2005) (citations omitted). This observation can only be stronger for an officer's violation of an isolated order from a superior, an order that is not necessarily found in written police department policy.

Therefore, the Court finds that the alleged incident involving the SUV, as well as the officer's decision not to follow an order, are not material for purposes of resolving the instant

motion. The Court will proceed with Plaintiff's § 1983 claim, considering only those facts that are relevant to the Court's analysis, and viewing those facts in Plaintiff's favor to the extent that his version of the events is feasible in light of the record.

The Court must begin its analysis of Plaintiff's excessive force claim "by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (citing *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)). The validity of Plaintiff's claim "must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard." *Id*. (citations omitted). In this case, the constitutional provision at issue is the Fourth Amendment.

In analyzing a Fourth Amendment excessive force claim, the Court inquires as to "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The Court judges the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396. Accordingly, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id*. at 396-97. In the context of an excessive force claim, when assessing the reasonableness of any given action, the Court considers the following non-exhaustive list of factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396.

The Fourth Amendment prohibits unreasonable searches and seizures; therefore, in order to show a Fourth Amendment violation, Plaintiff must first show that a seizure occurred. The Supreme Court has explained that

> a Fourth Amendment seizure does not occur . . . whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement . . . , but only when there is a governmental termination of freedom of movement *through means intentionally applied* . . . . [N]o Fourth Amendment seizure would take place where a "pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit," but accidentally stopped the suspect by crashing into him.

*County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596-597 (1989)) (emphasis in original). Accordingly, the collision between Officer Grossetete's patrol vehicle and Plaintiff's motorcycle was not a seizure unless the officer indeed intended to hit Plaintiff. At the summary judgment stage, this requires Plaintiff to raise a genuine issue of material fact as to whether Officer Grossetete's contact with Plaintiff was intentional or accidental.

Plaintiff suggests that in order to answer this question, the Court must resolve a factual dispute between the parties as to Officer Grossetete's intent when his car collided with Plaintiff's motorcycle. Plaintiff contends that the bifurcation of discovery in this case has rendered him unable to advance evidence to support his claim that Officer Grossetete's version of the events should not be credited. Plaintiff cites to the officer's deposition testimony, wherein he admits that APD's Internal Affairs unit was investigating him because they did not believe his version of the events. Specifically, Internal Affairs did not believe a portion of the police report wherein Officer Grossetete wrote that just before the two vehicles collided, Plaintiff began backing up his motorcycle towards the officer.

The Court has viewed the Air One footage, which depicts the collision as well as the moments leading up to it.  The voice of the officer operating Air One can be heard saying, "Ok he's on the median now, right where the off ram –  he's stopping at the base of the off ramp."  The word "median" occurs at 7:02 on the DVD; the first mention of "off ramp" – which is truncated – occurs at 7:05; the second mention of "off ramp" is at 7:06; and the collision occurs at 7:11.  The footage does not depict the exact moment when Officer Grossetete's vehicle exited the interstate, but it was no more than four seconds after the Air One operator *comprehensibly* stated the words "off ramp."  This depiction is entirely consistent with Officer Grossetete's version of the events, in which he explained that when he heard the word "median," he assumed that Plaintiff was positioned in the median to the *left* of the left-most lane of traffic, as opposed to the median between the right lane and the off ramp.  Due to this reasonable misunderstanding, upon seeing Plaintiff, Officer Grossetete had to quickly maneuver across the interstate in order to reach the median next to the off ramp.  In so doing, he lost precise control of his vehicle.  The Air One footage shows him suddenly engaging his brakes and swerving slightly in an apparent attempt to avoid colliding with Plaintiff, but nonetheless he hit Plaintiff's motorcycle with his patrol vehicle.

All the evidence on the record supports Defendants' contention that Officer Grossetete hit Plaintiff by accident.  Such accidental contact is not a seizure within the meaning of the Fourth Amendment, as it does not constitute termination of movement "through means intentionally applied."  *See Brower*, 489 U.S. at 597.  Plaintiff asks the Court to pile inference upon inference and assume that the fact that Internal Affairs did not believe Officer Grossetete's statement that Plaintiff was rolling his motorcycle backwards, means that the officer was lying (rather than mistaken in the midst of the stress of a high speed chase), which in turn means that he was also

lying when he claimed that the collision was unintentional. The Court finds that the sudden changes in the patrol car's movement and direction depicted on the Air One footage strongly support Officer Grossetete's contention that he was attempting to avoid hitting Plaintiff. Plaintiff has failed to raise a genuine issue of material fact that would cause the Court to question Officer Grossetete's responses to Plaintiff's counsel's questions during his sworn interview, in which he consistently stated that the collision was an accident.

In summary, to find in Plaintiff's favor on his excessive force claim, the Court would have to (1) assume that Officer Grossetete intentionally collided with Plaintiff in response to the rapidly unfolding situation confronting him; (2) assume or find that this collision amounted to an unlawful seizure, and (3) find that a balancing of the *Graham* factors points so heavily in Plaintiff's favor that a reasonable officer in Officer Grossetete's position should have been on notice that his conduct was unlawful. The evidence would not support a finding that the collision was intentional, nor has Plaintiff advanced authority that would support a conclusion that the collision amounted to such an obviously unlawful seizure. Accordingly, Officer Grossetete is entitled to qualified immunity as to Plaintiff's § 1983 claim.

## II.     Municipal Liability

Plaintiff's claim of municipal liability rests on a theory of failure to train and/or supervise. A prerequisite to the imposition of municipal liability is an unconstitutional action on the individual officer's part. *See*, *e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) ("the plaintiff must show *the particular illegal course of action* was taken pursuant to a decision made by a person with authority to make policy decisions" (emphasis added)); *Allen v. Muskogee, Okl.*, 119 F.3d 837, 842 (10th Cir. 1997) (listing as first requirement of failure-to-train claim proof that officer's actions "exceeded constitutional limitations"). As the Court has found that

Officer Grossetete did not commit a constitutional violation, it has no basis to impose municipal liability.

## III. State Law Claims

Having disposed of the sole federal claim asserted in this action, this Court is authorized to dismiss Plaintiff's supplemental state claim as well. *See Bateman v. City of West Bountiful*, 89 F.3d 704, 709 (10th Cir. 1996). Specifically, the Court has discretion to decline to exercise jurisdiction where, as here, it has dismissed "all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "The Supreme Court has instructed that 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims.'" *Merrifield v. Bd. of County Comm'rs for Santa Fe*, 654 F.3d 1073, 1085 (10th Cir. 2011) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Further, the Tenth Circuit has "generally held that if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010).

Taking into consideration the relevant factors, and following Tenth Circuit precedent, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. The interests of judicial economy, convenience, fairness and comity all weigh in favor of allowing the state court the opportunity to resolve these claims. Accordingly, the Court will dismiss, without prejudice, the state law claims in their entirety.

## CONCLUSION

It is **HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 19) is **GRANTED**.  Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**. Defendants' Motion is **DENIED AS MOOT** with respect to this claim.

Dated this 28th day of August, 2013.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**

*Attorneys for Plaintiff:*
Richard J. Valle
Criostoir O'Cleireachain
Emeterio L. Rudolfo

*Attorney for Defendant:*
Kristin J. Dalton